[No. 11228–7–I.   Division One.   March 5, 1984.]

RAYMOND E. THAYER, ET AL, *Appellants,* v. WINIFRED M. THOMPSON, ET AL, *Respondents.*

*Nelle & Packer* and *Mark B. Packer,* for appellants.

*Mark A. Boyson,* for respondents.

RINGOLD, J.—This is a declaratory judgment action brought by Raymond E. and Marilyn Thayer (Thayer), subsequent purchasers of land, against Winifred M. Thompson and her stepchildren (Thompson), sellers, to determine the validity of a restrictive covenant in a real estate contract. The covenant provides: "No buildings nor improvements shall be constructed or placed upon Lot 11, Block 10, above described . . without the prior consent of seller, his heirs or assigns, in writing." The trial court found that the covenant was valid and enforceable and dismissed Thayer's complaint. Thayer appeals, contending the cove-

nant violates public policy because it is an unreasonable prohibition on the use of land. We disagree and affirm the trial court.

Thompson and her husband, now deceased, owned lots 11–14 and lots 26–31 of block 10 in the Cedar Addition to Bellingham. The Thompson home is on lots 12–14. Lot 11 is adjacent to the house and lots 26–31 are behind it. In 1970, Thompson sold lot 11 and lots 26–31 to a real estate developer for $15,600. The real estate contract, which contained the restrictive covenant on lot 11, was recorded on January 26, 1970.

In 1978, Thayer purchased lots 11 and 26–31 from the real estate developer, intending to build an apartment complex on them. He contacted Thompson, inquiring what type of structure she would consent to being built on lot 11. She indicated she would not consent to any type of structure, stating the restriction was put in the contract "because we didn't want any building that close to our house." Thayer then filed suit seeking to have the restriction on lot 11 declared invalid.

At trial, Thompson testified that she sold lots 26–31 for $15,000 and lot 11 for $600. She explained that lot 11 was intended for use only as access to the back lots and that without the restrictive covenant, the lot would not have been sold. She also stated that she would consent to the lot's use for parking, a playground or an open space area for the apartment complex. Thayer testified that the value of lot 11 without the restriction was at least $12,000, but that with the restriction the lot was virtually useless.

The trial court concluded that the restrictive covenant was reasonable and was not a complete prohibition on the use of property nor contrary to public policy. Thayer appeals.

### Does the Covenant Violate Public Policy?

■ The first issue we consider is whether the covenant, as written, violates public policy by unreasonably prohibiting the use of the burdened property. The recognized prin-

ciples for construing covenants restricting the use of real property are explicated in *Burton v. Douglas Cy.*, 65 Wn.2d 619, 621–22, 399 P.2d 68 (1965):

> (1) The primary objective is to determine the intent of the parties to the agreement, and, in determining intent, clear and unambiguous language will be given its manifest meaning. (2) Restrictions, being in derogation of the common–law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. Doubts must be resolved in favor of the free use of land. (3) The instrument must be considered in its entirety, and surrounding circumstances are to be taken into consideration when the meaning is doubtful.

(Citations omitted). Unless there is an ambiguity in the writing, the intent of the parties is to be gathered from the document. *Lenhoff v. Birch Bay Real Estate, Inc.*, 22 Wn. App. 70, 73, 587 P.2d 1087 (1978). The covenant at issue contains no ambiguity. It prohibits the erection of *any* building or improvement[1] on the burdened property without the consent of Thompson or her heirs.

The test of whether a contractual provision violates public policy is "whether the contract as made has a 'tendency to evil,' to be against the public good, or to be injurious to the public." *Golberg v. Sanglier*, 27 Wn. App. 179, 191, 616 P.2d 1239 (1980), *rev'd on other grounds*, 96 Wn.2d 874, 639 P.2d 1347 (1982). Traditionally, covenants restricting the use of land were disfavored by the courts. This view was based on the common law right to use land for all lawful purposes and the policy disfavoring any encumbrances on title. Stoebuck, *Running Covenants: An Analytic Primer*, 52 Wash. L. Rev. 861, 885–86 (1971). In *Leighton v. Leonard*, 22 Wn. App. 136, 142, 589 P.2d 279 (1978), we recognized that the pressures of increased urbanization

---

[1]From the record before us we are not required to consider whether the sellers unreasonably refused consent to any improvements on lot 11 other than a building or structure. *See Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973); *Conaway v. Time Oil Co.*, 34 Wn.2d 884, 894, 210 P.2d 1012 (1949).

were forcing changes in judicial reluctance to fetter the use of land, stating: "[a]s public restrictions, in the form of zoning, have gained favor, so have private restrictions." The modern viewpoint is that building restrictions are for the protection of the public as well as the property owner. Such restrictive covenants need only be reasonable and reasonably exercised to be valid. *See* 7 G. Thompson, *Real Property* § 3166 (Supp. 1981). A covenant entirely prohibiting the use of land is unreasonable and is therefore void. 5 R. Powell, *Real Property* ¶ 674 (1981). The covenant at issue does not prohibit the use of the burdened property. Although the covenant requires the consent of Thompson to erect a building, the lot could be used, *e.g.,* as a recreation area even without the seller's consent. We agree with the trial court that the covenant is reasonable and does not violate public policy.

### DURATION OF COVENANT

Thayer next contends that the court erred in failing to determine the covenant's duration. The trial court correctly concluded that the covenant runs with the land both on the benefit side, Thompson's lots, and the burden side, lot 11. *See Leighton v. Leonard, supra* at 139. A covenant running with the land has an indefinite life, subject to termination by conduct of the parties or a change in circumstances which renders its purpose useless. Stoebuck, *supra* at 882–85; 5 R. Powell, at ¶ 679. The trial court found that Thompson had not relinquished the covenant, finding of fact 11, and that no change in circumstances rendering the covenant useless had occurred, finding of fact 12. Error has not been assigned to these findings and, consequently, we accept them as verities. *Weyerhaeuser Real Estate Co. v. Stoneway Concrete, Inc.,* 96 Wn.2d 558, 565, 637 P.2d 647 (1981). Whether such conditions may occur in the future is speculative and not ripe for resolution at this time. *Diversified Indus. Dev. Corp. v. Ripley,* 82 Wn.2d 811, 815, 514 P.2d 137 (1973). The court did not err in refusing to determine the covenant's duration.

798

We affirm the trial court's judgment declaring the covenant to be valid and enforceable.

SWANSON, J., and SODERLAND, J. Pro Tem., concur.

Review denied by Supreme Court May 11, 1984.