[No. 34211-8-I.   Division One.   January 8, 1996.]

WILLIAM J. RISS, ET AL., *Respondents*, v. LEE ANGEL, ET AL., *Defendants*, BRUCE ATTEBERY, ET AL., *Appellants*.

554

555

*J. Richard Aramburu*, for appellants.

*Christopher I. Brain* and *Tousley Brain*, for respondents.

Cox, J. — In 1992, William and Carolyn Riss bought Lot 6 in Mercia Heights with plans to raze the existing dwelling and build a new one. The Risses submitted their proposed plans for the new dwelling to the homeowners' association for approval. The association rejected the plans, claiming they were inconsistent with restrictive covenants governing the development. The Risses commenced an action against the homeowners and recovered judgments for damages, attorney fees, and other relief. Selected homeowners appeal. Because (a) the homeowners unreasonably disapproved the Risses' plans, (b) the homeowners of this unincorporated association are jointly and severally liable for damages resulting from the disap-

proval, and (c) the trial court properly awarded attorney fees to the Risses, we affirm.

The Risses own Lot 6 in Mercia Heights in the City of Clyde Hill. The Mercia Corporation is a nonprofit corporation composed of homeowners in Mercia. The corporation was administratively dissolved on July 1, 1985. The homeowners have since administered the covenants at issue here as an unincorporated association, acting through its elected board.

All lots in Mercia are subject to the covenants. They specify an approval process by which the board of the association reviews designs of proposed construction for compliance with the covenants. The covenants also provide for an appeal process to all homeowners from the decisions of the board.

The covenants specify minimum square footage, setback, and height restrictions for all lots. The covenants do not contain any specific references to maximum limitations on the size, square footage, or bulk of a residence.

After a bench trial on the claims brought by the Risses, the court entered an order and declaratory judgment in favor of the Risses. The court later entered a judgment against the homeowners for damages and attorney fees arising from the Risses' claims.

# I
## DESIGN REVIEW

The homeowners first argue that the trial court erroneously concluded that they exceeded their authority under the covenants when they rejected the Risses' design proposal. We disagree.

The interpretation of the language in restrictive covenants is a question of law.[1] We review that question de novo.[2] The primary objective in our review is to

---

[1] *Parry v. Hewitt*, 68 Wn. App. 664, 668, 847 P.2d 483 (1992).

[2] *Failor's Pharmacy v. Department of Social & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994).

determine the intent of the parties to the agreement.[3] Appellate courts construe ambiguities against the drafter of a document.[4]

The homeowners first argue that the specific covenant provisions regarding minimum square footage, maximum height, and minimum setback do not limit their right to refuse any proposed structure or remodel for any reason. Paragraph 6 of the covenants gives the association the right to disapprove the design, finishing, or painting of any construction that is not suitable or desirable for any reason, aesthetic or otherwise. As support for that assertion, they cite *Thayer v. Thompson,*[5] where this court upheld a broadly worded restrictive covenant in a real estate contract. Thayer had purchased several lots with the intention of building an apartment complex. The real estate contract for one of the lots contained a restrictive covenant providing that no buildings or improvements could be constructed on the lot without the prior written consent of Thompson, the seller.[6] Thompson refused to consent to any kind of building, stating that she did not want any building that close to her house.[7] The court upheld the restriction, reasoning that the document contained no ambiguity and did not impermissibly restrict use of the land, since it allowed use of the land as a recreation area, for example.[8]

*Thayer* is factually distinguishable. The only covenant addressed by the court in that case was the approval requirement. The approval clause in the instant case must be read in conjunction with the maximum height, setback,

---

[3]*Parry,* 68 Wn. App. at 668 (citing *Burton v. Douglas County,* 65 Wn.2d 619, 621, 399 P.2d 68 (1965)).

[4]*See, e.g., Lynott v. National Union Fire Ins. Co.,* 123 Wn.2d 678, 690, 871 P.2d 146 (1994); *Berg v. Hudesman,* 115 Wn.2d 657, 677, 801 P.2d 222 (1990); *Guy Stickney, Inc. v. Underwood,* 67 Wn.2d 824, 827, 410 P.2d 7 (1966).

[5]36 Wn. App. 794, 677 P.2d 787, *review denied,* 101 Wn.2d 1016 (1984).

[6]*Thayer,* 36 Wn. App. at 794-95.

[7]*Thayer,* 36 Wn. App. at 795.

[8]*Thayer,* 36 Wn. App. at 796-97.

and minimum square footage requirements. As noted above, we must construe covenants strictly against the drafter. In this case, since the Mercia homeowners drafted the 1990 amendments that addressed issues such as maximum height, they are the drafters for the purposes of this appeal.

██ ██ In *Bersos v. Cape George Colony Club*,[9] Division Two of this court addressed the authority of a real estate development's board to stop a property owner from subdividing a platted lot, based on restrictive covenants. There was no express restriction on subdivision of platted lots. But there was a requirement for a property owner to submit for approval a construction plan to the Membership Committee of Cape George Colony.[10] In light of the "well-settled principles which favor the free use of land," the court stated that the restrictive covenants would not be extended by implication beyond the clear meaning of the language used in them.[11] Applying that rule and Bersos' lack of knowledge of any restriction on subdivision when he purchased the lot, the court held that he took the lot free of any such restriction.[12] In addition, the court stated that the committee must apply reasonable standards in the approval process.[13]

The homeowners attempt to distinguish *Bersos* on the facts, arguing that it was not a design review case at all, but rather, a failure of the covenants to give notice of a restriction on the subdivision. The homeowners argue conclusorily that paragraph 6 of the covenants authorizes them to "disapprove new construction on several specified grounds" without specifying what those grounds are.[14] The *Bersos* court held that where a set of restrictive covenants

---

[9]10 Wn. App. 969, 521 P.2d 1217 (1974).

[10]*Bersos*, 10 Wn. App. at 970.

[11]*Bersos*, 10 Wn. App. at 971.

[12]*Bersos*, 10 Wn. App. at 973.

[13]*Bersos*, 10 Wn. App. at 973.

[14]Reply Br. of Appellants at 12.

failed to provide any notice of a restriction on the subdivision, a discretionary review covenant did not authorize such a restriction.[15] Here, the covenants do set forth specific standards for maximum height and minimum setback. The gravamen of the *Bersos* holding is that a review board may not engraft new restrictions beyond those clearly expressed in the covenants; thus, it is directly on point in the instant case.

In *Davis v. Huey*,[16] the Texas Supreme Court addressed a factual scenario quite similar to that of this case. There, the plaintiffs sought to build a house that complied with the setback provisions in the subdivision's restrictive covenants, as both parties agreed.[17] The developer refused to approve the plans. The refusal was based on its general authority under the covenants to refuse a proposal " 'on any ground, including purely aesthetic grounds, which in the sole and uncontrolled discretion' " of the developer seemed sufficient.[18] The developer supported its decision with assertions that completion of the house would reduce the value of surrounding property because of its size and placement, and that the proposed construction would block neighbors' views.[19] The court held that the covenant providing for discretionary approval did not give the plaintiffs notice that their lot was subject to greater setback requirements than those specifically set out in the covenants.[20]

The homeowners seek to distinguish *Davis* on the basis that the dispute in that case was between a homeowner and the developer, rather than between homeowners, as is the case in Mercia. Thus, the rule of strict construction applied in *Davis* against the developer, with regard to the

---

[15]*Bersos*, 10 Wn. App. at 973.

[16]620 S.W.2d 561 (Tex. 1981).

[17]*Davis*, 620 S.W.2d at 564.

[18]*Davis*, 620 S.W.2d at 564.

[19]*Davis*, 620 S.W.2d at 564.

[20]*Davis*, 620 S.W.2d at 566.

discretionary approval covenant, should not apply to the instant case. But, the Mercia homeowners themselves addressed the language restricting height and chose not to restrict height further than the existing language in 1990. As a result, they are in essentially the same position regarding specific restrictions in the covenants as the original drafters, having carefully examined them and voted not to amend. Thus, *Davis* is on point.

The South Carolina Court of Appeals addressed the permissible scope of building plan approval in *Palmetto Dunes Resort v. Brown*.[21] In that case, the resort's Architectural Review Board rejected Brown's proposed plans to build a new residence, based on its discretionary authority to disapprove plans for purely aesthetic reasons.[22] Brown's primary challenge was to the lack of any objective standards to guide the review board in its determination.[23] The court held that the covenant in question was not void for vagueness, but went on to note that the board's reason for disapproval based on aesthetics "must bear a reasonable relation to the other buildings or general plan of development."[24]

The homeowners read *Palmetto Dunes* as validating their exercise of broad discretion in plan approval. But that case is factually distinguishable. The South Carolina court held that the intent of the approval clause, viewed in relation to the entire document, was to vest in the review board the authority to disapprove plans based upon its judgment of their aesthetic suitability.[25] However, unlike in the Mercia covenants, there were no objective criteria in the Palmetto Dunes covenants. Thus, the issue was not whether the review board had acted in derogation of existing criteria, but whether the broad discretionary

---

[21]287 S.C. 1, 336 S.E.2d 15 (Ct. App. 1985).

[22]*Palmetto Dunes*, 336 S.E.2d at 17.

[23]*Palmetto Dunes*, 336 S.E.2d at 17.

[24]*Palmetto Dunes*, 336 S.E.2d at 19.

[25]*Palmetto Dunes*, 336 S.E.2d at 18.

approval clause was too vague as a matter of law, absent some objective criteria to guide the board.[26] Because there was no potential conflict between specific restrictions in the covenants and a discretionary decision by the board, *Palmetto Dunes* is not helpful for analysis of the Mercia covenants.

The trial court in this case concluded on the basis of undisputed testimony that the height of the Risses' proposed residence was well below the maximum stated in the covenants. In 1990, there was an attempt to amend paragraph 4 to limit the height of new construction on a lot to the height of any existing construction. That attempt failed. According to testimony at trial, the proposal failed because the homeowners were concerned about reducing the value of their property with such a restriction. The 20-foot maximum was the only clear statement of height restriction in the covenants. The Risses' planned dwelling had a ridge height of $11^1/2$ feet from the highest point of finished grade on the lot. Under *Bersos*, the trial court did not err in concluding that the Mercia homeowners could not restrict the Risses' proposal any further than the covenants clearly stated.

Likewise, the trial court did not err in concluding that it was unreasonable for the homeowners to create a different setback requirement from the one clearly expressed in the covenants. The Risses' design was well within the covenants' requirement.

Finally, the homeowners' objection to the bulk of the Risses' proposed residence was beyond the scope of their authority. The only restriction on size in the covenants was a minimum square footage requirement for livable space. The Risses planned a home with more than 1,400 square feet in living area. That met the requirements of the covenants.

■ ■ The homeowners next assert that the decision of their board should be accorded the same sort of deference

---

[26]*Palmetto Dunes*, 336 S.E.2d at 17.

as quasi-judicial decisions of state agencies are under Washington's Administrative Procedure Act (APA).[27] Their reliance on that standard is misplaced. The APA applies only to governmental entities.[28] The homeowners' association is not a government.

The homeowners also argue that the trial court should not have evaluated the reasonableness of their decision through the use of evidence and testimony not presented to them at the time they made their decision. We review admission of evidence under an abuse of discretion standard.[29] The homeowners' argument flows from the assertion that the court should have treated them as it does governmental entities under the APA. Since they are not a government, the proceedings before the board do not constitute an administrative record. Thus RCW 34.05.558, which restricts review of agency decisions to the agency record, does not apply. The trial court did not abuse its discretion by admitting evidence not presented to the Mercia board.

The homeowners make various assertions about the probity of their decision-making process. For example, they assert that the meetings were fair and open and that no misleading information was presented there. Further, they assert that they were under no obligation to prepare studies that might have given them more information to make a comparison of relative bulk, for example. But these arguments are misplaced. The covenants do not permit the homeowners to create new standards for size, setback, or height beyond those already contained in the covenants as written. Because the homeowners acted

---

[27]RCW 34.05.

[28]See RCW 34.05.010(2) (defining "agency"). See also William R. Andersen, *The 1988 Washington Administrative Procedure Act—An Introduction*, 64 Wash. L. Rev. 781, 784-87 (1989) (describing agencies covered by the APA).

[29]*Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984).

outside their authority under the covenants, their manner of doing so is irrelevant.

## II

### JOINT AND SEVERAL LIABILITY

The homeowners argue that the trial court erred in holding them jointly and severally liable for damages to the Risses. They claim the trial court could not impose liability without knowing how each homeowner voted. We disagree.

██ The Supreme Court has stated that "the liability of the members of a voluntary association is joint and several, and . . . each member is individually liable for all of the debts of the association to third parties."[30] Prior to trial, the Risses offered each homeowner the opportunity to withdraw from the litigation and be released from potential liability in exchange for an agreement not to oppose the Risses' design. Five households did so. The trial court did not err in holding the remaining homeowners jointly and severally liable for damages.

## III

### ATTORNEY FEES

The Mercia homeowners challenge the fact but not the amount of the award of attorney fees to the Risses. We hold that the trial court did not err in making the award.

██ A trial court may award attorney fees only where there is a contractual, statutory, or recognized equitable basis.[31] Where a contract provides for such fees, RCW 4.84.330 requires that the court award them to the prevail-

---

[30]*Nolan v. McNamee*, 82 Wash. 585, 587, 144 P. 904 (1914).

[31]*Miotke v. Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984).

ing party.[32] Paragraph 21 of the covenants provides that it is lawful for each lot owner to sue to enforce the covenants and recover damages, attorney fees, and costs against any person or persons violating the covenants. A prevailing party is one who receives a judgment in his or her favor.[33] If neither party wholly prevails, then the party who substantially prevails is the prevailing party—a determination which turns on the extent of relief awarded the parties.[34] Here, the trial court concluded that the Risses were the prevailing parties on all material issues because the litigation centered around their right to build the home for which they sought approval. The case did not turn on the validity of the covenants, an issue on which the homeowners prevailed. The court also concluded that, although the Mercia homeowners had the right to control exterior finish, that aspect of the litigation was a minor issue and had no significant impact on the expense of the trial. The homeowners received essentially no relief; to the contrary, they are liable for substantial damages. The trial court did not err in concluding that the Risses were the prevailing parties and awarding them attorney fees. The Risses having complied with RAP 18.1 by requesting fees and costs on appeal, we therefore also award them reasonable appellate attorney fees and costs.[35]

■■■ While the homeowners assigned error to other factual findings and conclusions of law, they did not argue those other issues. We will not consider assignments of error that the homeowners did not argue.[36]

---

[32]*See Marassi v. Lau*, 71 Wn. App. 912, 915, 915 n.3, 859 P.2d 605 (1993) (quoting RCW 4.84.330).

[33]*Marassi*, 71 Wn. App. at 915.

[34]*Marassi*, 71 Wn. App. at 916.

[35]*See West Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985) (holding that contractual provision that supports award of attorney fees at trial also supports award on appeal under RAP 18.1).

[36]*Rhinehart v. Seattle Times, Inc.*, 59 Wn. App. 332, 336, 798 P.2d 1155 (1990).

We affirm the judgments.

AGID and BECKER, JJ., concur.

Review granted at 129 Wn.2d 1019 (1996).