[No. 41584-1-I. Division One. April 19, 1999.]
JERRY SCHWARTZ, ET AL., *Respondents*, v. ATLAS VAN LINES, INC., ET AL., *Appellants*.

*Mitchell, Lang & Smith* by *Matthew Taylor Boyle* and *Catherine Doudnikoff*, for appellants.

*Williams, Kastner & Gibbs P.L.L.C.* by *Randy Jarl Aliment* and *Margaret A. Sundberg*, for respondents.

Cox, J. — At issue are the timeliness and sufficiency of a claim for damaged and lost household goods that Jerry and Tricia Schwartz submitted to Atlas Van Lines, a moving and storage company. Because the Schwartzes timely and substantially complied with the claim-filing requirements with respect to certain household goods, but failed to comply with the requirements as to others, we affirm in part, reverse in part, and remand with instructions.

In 1990, the Schwartzes contracted in California with an agent of Atlas to pack and store their household goods until completion of construction of their new home in Washington. For reasons not pertinent to this appeal, the goods were temporarily stored at Mitchell Moving and Storage, a local Atlas agent, upon arrival in Washington.

On July 9, 1993, Mitchell delivered most of the Schwartzes' goods to them at their new home. Four days later, Mr. Schwartz called Mitchell and reported that a sectional sofa and some bar stools were not among the goods delivered on July 9. That same day, he sent a letter via facsimile transmission to Mitchell that identified the missing items and included a photo of what they looked like. By letter dated July 22, 1993, Mitchell informed the Schwartzes that it was unable to locate the missing items. Mitchell also enclosed a claim form with the letter and specifically stated to the Schwartzes that they should file a claim.

In April 1994, the Schwartzes filed a claim for damaged and lost goods with Atlas. Atlas denied the claim as untimely. It did so on the basis of language in the uniform

bill of lading, which the Schwartzes signed, that specified that a claim must be filed within nine months of delivery. Following the denial, the Schwartzes commenced this action for breach of contract, negligence, and conversion. On cross-motions for summary judgment on the issue of the timeliness of the April 1994 claim, the trial court ruled that the claim was timely. Thereafter, the court granted the Schwartzes' second motion for summary judgment as to liability, damages, and attorney fees. The court also entered a money judgment against Atlas.

Atlas appeals the summary judgment orders and the judgment.

## I. Timeliness of Claim

The threshold issue we must resolve is whether the Schwartzes filed a timely claim with Atlas. We hold that their April 1994 claim was untimely, but a July 13, 1993 letter substantially conformed to the claims-filing requirements and was timely.

We may affirm a grant of summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] We consider all facts and the reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party.[2] We review questions of law de novo.[3]

■ This claim arises from the interstate shipment of goods and is therefore governed by the provisions of the Carmack Amendment[4] to the Interstate Commerce Act. Under that amendment, a carrier may set a time limit in the bill of lading for filing a written claim for damages, so

---

[1]CR 56(c).

[2]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[3]*Failor's Pharmacy v. Department of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994).

[4]49 U.S.C. § 14706.

long as it is not less than nine months after delivery.[5] Consistent with that statutory limitation, the bill of lading that the Schwartzes signed provided in relevant part:

> As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery . . . or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

A carrier is not obligated to pay a claim unless a written claim is filed within the time limits specified by the bill of lading.[6]

Atlas contends that the Schwartzes failed to submit a written claim for damages within the nine-month period. Atlas' argument focuses on the April 1994 claim form submitted by the Schwartzes. The claim form listed the missing and damaged items and provided estimated valuations for most of the items. Atlas contends that it received the April 1994 claim form more than nine months after delivery. The record supports this contention. Atlas' claims department received and filed the Schwartzes' claim on April 18, 1994, nine months and nine days after delivery.[7]

The Schwartzes maintain that they sent the claim by Federal Express on April 8.[8] But the Federal Express tracing report in the record shows that the claim was sent on April 15 and received on April 18. Moreover, the Schwartzes' claimed mailing date has no relevance here.

---

[5]49 U.S.C. § 14706(e)(1).

[6]49 C.F.R. § 1005.2(a).

[7]Clerk's Papers at 23, 24.

[8]Clerk's Papers at 97.

The bill of lading requires that the claim be "filed" within nine months of delivery. A claim is not considered filed until the party with whom it is to be filed receives it.[9] Here, that date is April 18, more than nine months after delivery. There is no genuine issue of material fact regarding the filing date.

The Schwartzes next contend that the 1994 claim form was timely even if Atlas received it on April 18. In making this argument, they rely on the bill of lading's provision that, "in case of failure to make delivery, [the claim must be filed] within nine (9) months after a reasonable time for delivery has elapsed." They contend that, for the items Atlas failed to deliver, the reasonable time for delivery did not expire until July 22, 1993, when Mitchell informed the Schwartzes that it could not find the missing items. Measuring the nine-month period from this later date, the April 18, 1994 claim form would be timely.

As a preliminary matter, we note that this argument applies only to the undelivered items, not to the damaged items delivered to the Schwartzes on July 9, 1993. The "reasonable time for delivery" provision in the bill of lading applies only where there is a "failure to make delivery." Because there is no dispute that the April 1994 claim form was filed more than nine months after the damaged items were delivered, the claim was untimely with respect to those delivered items.

And, with respect to the missing items, the Schwartzes present no authority—nor can we find any—that supports their argument that July 22, 1993 constitutes a "reasonable time" for delivery within the meaning of the bill of lading. Atlas, by contrast, cites a New Jersey case, *Rollei of Am., Inc. v. T.I.M.E.—DC, Inc.*,[10] that expressly rejects this

---

[9]*Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 902 (2d Cir. 1980) *cert. denied*, 450 U.S. 915 (1981) (notice of claim untimely when it was mailed on last day of nine-month period for filing and received the next day); *Elroy Enters., Inc. v. Roadway Express, Inc.*, 746 F. Supp. 284, 286 (E.D.N.Y. 1990) (date claim is received by carrier, not mailing date, governs timeliness of claim).

[10]140 N.J. Super. 560, 357 A.2d 33 (1976).

approach. There, the carrier delivered five out of the seven boxes expected by the shipper. The court concluded that, because a delivery had been made, the provision for "in case of failure to make delivery, [the claim must be filed] within nine months after a reasonable time for delivery has elapsed" did not apply.[11] Thus, the question of what constituted a reasonable time for delivery was irrelevant. The court concluded that the claims-filing period must be measured from the date of partial delivery, rather than from the expiration of a later proposed "reasonable time for delivery" of the missing boxes.[12] Applying that reasoning here, Atlas contends that the claims-filing period commenced on July 9, 1993, when the majority of the Schwartzes' goods were delivered to them.

■ The Schwartzes urge us not to follow the reasoning of *Rollei* because the shipper there was a commercial entity. But we do not find this distinction persuasive. Nothing in the Carmack Amendment suggests that bills of lading are to be construed differently depending on whether the shipper is a commercial or residential entity.

■ Nonetheless, we are not bound by the reasoning of *Rollei*, a New Jersey case. Moreover, because the shipment at issue here is governed by the Interstate Commerce Act, proper construction of the bill of lading is a federal question.[13] Thus, although neither party cites any federal authority on the proper construction of the phrase "reasonable time for delivery," we consider *Chesapeake*, a United States Supreme Court case that interpreted the phrase in a related statute.[14] The Court concluded that what constitutes a reasonable time for delivery is a fact-

---

[11]*Rollei*, 140 N.J. Super. at 563, 565.

[12]*Rollei*, 140 N.J. Super. at 565.

[13]*Chesapeake & Ohio Ry. v. Martin*, 283 U.S. 209, 212-13, 51 S. Ct. 453, 75 L. Ed. 983 (1931).

[14]*Chesapeake*, 283 U.S. at 212 (citing Transportation Act, ch. 91, 41 Stat. 456, 494 (1920); former 49 U.S.C. § 20(11).

specific inquiry.[15] Relying on testimony of one of the carrier's employees, the Court concluded that the phrase should be construed to mean the time "to transport and make delivery of the shipment in the ordinary course of business, in the light of the circumstances and conditions surrounding the transaction."[16] Federal cases have generally followed the *Chesapeake* approach when faced with the question of what constitutes a reasonable time for delivery after either a failure to make delivery or a failure to make a complete delivery.[17]

Here, we need not choose between the *Chesapeake* and *Rollei* approaches. Under the rule of either case, the Schwartzes' argument fails. The Schwartzes point to no evidence in the record to show that they have met the *Chesapeake* fact-specific test to support their claim that July 22 represents a reasonable time for delivery. Moreover, they present no legal authority to support their claim that July 22, 1993, has any significance in determining a reasonably time for delivery. Because we can find no principled basis to accept that date as the reasonable time for delivery, we conclude that the claims-filing period commenced on the date of partial delivery, July 9, 1993. Because the April 1994 claim was not filed within nine months of that date, it is untimely as a matter of law.

---

[15]*Chesapeake*, 283 U.S. at 213.

[16]*Id.*

[17]*See, e.g., Imperial News, Co. v. P-I-E Nationwide, Inc.*, 905 F.2d 641, 644 (2d Cir. 1990) (applying rule of *Chesapeake* and concluding that 124 days clearly exceeded a reasonable time for delivery where testimony revealed that the estimated shipping time was six to seven days); *Intech, Inc. v. Consolidated Freightways, Inc.*, 836 F.2d 672, 675 (1st Cir. 1987) ("Two or three days, a week, perhaps even a month, may have been a commercially reasonable time . . . . We need not count the days, however, because it is clear that more than three months is too long. Accordingly, the claim, filed thirteen months after May 24 was untimely as a matter of law."); *Elroy Enters.*, 746 F. Supp. at 287 (following carrier's transportation schedules, concluding that four days was the reasonable time for delivery, where shipper failed to present any evidence to show that delivery would reasonably have taken longer than the scheduled time); *Action Drug Co. v. Overnite Transp. Co.*, 724 F. Supp. 269, 275 (D. Del. 1989) (finding claim timely because, under facts of the case and all of the evidence presented, 46 days was a reasonable time for delivery and claim was filed within nine months of that 46-day period), *aff'd*, 902 F.2d 1558 (3d Cir. 1990).

■ The Schwartzes next contend that, if their April 1994 claim was untimely, the July 13, 1993 letter that they sent by facsimile to Mitchell satisfies the written claims requirement and makes their claim timely as a matter of law. It stated:

> Please find attached the pictures I was able to locate of the sectional and bar stools that were among the items missing from our household goods delivered last Friday. I'm amazed that furniture pieces this large could be misplaced. If as you suspect they show up in your warehouses without inventory labels, hopefully the descriptions I've provided will make it possible to identify those pieces belonging to us.

> I'm concerned that we are now faced with the possibility of several thousand dollars of unplanned expenses to complete furnishing of our new home. As we've discussed, if our furniture can't be located in the near future we definitely need for you to expedite processing of the claim to reimburse us for our losses under the insurance coverage that we've taken out for the move.

For purposes of summary judgment, Atlas conceded that it received the letter.[18] But Atlas claims that this letter was insufficient to constitute a claim. In making this argument, Atlas relies on the Interstate Commerce Commission (ICC) regulations[19] governing the processing of claims for loss or damage to property transported by common carriers subject to the Interstate Commerce Act.[20] Under these regulations, a written claim must (1) contain facts sufficient to identify the shipment at issue; (2) assert liability for alleged loss or delay; and (3) make a claim for payment of a specified or determinable amount of money.[21]

Atlas also invites our attention to a Second Circuit case

---

[18]Clerk's Papers at 157 n.1.

[19]49 C.F.R. § 1005.2.

[20]*See Insurance Co. of N. Am. v. G.I. Trucking Co.*, 1 F.3d 903, 906 (9th Cir. 1993) (holding that these regulations apply to contested claims), *cert. denied*, 510 U.S. 1044 (1994).

[21]49 C.F.R. § 1005.2(b).

that considered the adequacy of a written claim under the ICC regulations.[22] There, the letter from the shipper stated only that it was in the process of filing a claim for damage to a freight shipment.[23] The Second Circuit agreed with the district court's conclusion that the letter did not meet the minimum claims-filing requirements because it "failed to assert that [the carrier] . . . was liable for any loss, and it failed to claim a specified or ascertainable amount of money as damages."[24]

The Schwartzes, by contrast, invite our attention to several Ninth Circuit cases suggesting that "substantial compliance" with the claims-filing requirements is sufficient.[25] The most recent of these cases expressly rejects the Second Circuit's conclusion that "a claim must specify an amount of damages to be considered legally sufficient under the regulations."[26] Instead, the Ninth Circuit held that the need for a formal claim is relaxed in "limited situations" and that "a written notice of damage, coupled with a clearly communicated intent to hold the carrier liable, plus the carrier's investigation, suffices as a written claim."[27] Accordingly, a shipper's letter of intent to hold the carrier liable for an estimated amount of damages was sufficient where the record indicated that the carrier investigated the claim.[28]

The Ninth Circuit's approach accords well with the original purpose of the claims-filing requirement. According to the Supreme Court, that purpose is to aid in the prompt investigation of a shipper's damage claim, not to allow a

---

[22]*Pathway Bellows*, 630 F.2d 900.

[23]*Id*. at 901.

[24]*Id*. at 903.

[25]*See G.I. Trucking*, 1 F.3d 903; *Culver v. Boat Transit, Inc.*, 782 F.2d 1467 (9th Cir. 1986); *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus*, 762 F.2d 1364 (9th Cir. 1985).

[26]*G.I. Trucking*, 1 F.3d at 906.

[27]*Culver*, 782 F.2d at 1469.

[28]*G.I. Trucking*, 1 F.3d at 907.

carrier to escape liability.[29] Thus, written notice that "sufficiently apprise[s] the carrier of the character of the claim" is sufficient.[30]

Here, the July 13 letter substantially complied with the ICC claims-filing regulations. The letter identified the shipment and asserted the intent to hold Atlas liable for the lost furniture items. It expressly identified as missing "the sectional and bar stools" and estimated the amount of loss at several thousand dollars. This information was sufficient to trigger Atlas' investigation of the claim with respect to these lost items. And, in fact, the record confirms that, after receipt of the July 9 letter, Mitchell attempted to locate the missing items.

Based on the July 13 letter, the Schwartzes' claim was timely with respect to the missing items that it expressly identified. But the claim was not timely with respect to the remainder of the missing items and the damaged items. Thus, we remand for recalculation of the judgment based on the value of the items expressly identified in the July 13 letter.

## II. Estoppel

The Schwartzes claim that Atlas is estopped from asserting the nine-month limitations period. We disagree.

Estoppel requires a statement or act that is inconsistent with a position later taken, reasonable reliance by the other party on that statement or action, and injury to the party so relying.[31]

First, the Schwartzes contend that Mitchell advised them to wait to file their claim until it completed a tracer action for the missing items. But the record shows that Mitchell advised the Schwartzes to file their claim as soon as pos-

---

[29]*Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196, 36 S. Ct. 541, 544, 60 L. Ed. 948 (1916).

[30]*Blish Milling*, 241 U.S. at 198.

[31]*Patterson v. Horton*, 84 Wn. App. 531, 544, 929 P.2d 1125 (1997).

sible, so as not to hold up its processing while the tracer action was completed.

■ Second, the Schwartzes contend that the fact that Atlas commenced a search for the items after it received the April 1994 claim form estops it from asserting the nine-month limitations period. But the fact that the filing of the claim triggered an investigation by Atlas does not preclude it from asserting the nine-month limitations period. The Schwartzes offer no persuasive reason for concluding otherwise.

Third, the Schwartzes claim that the fact that their personal papers were lost estops Atlas from asserting the limitation period. But while the loss of these papers may have some relevance to the accuracy of the claim form, it does not appear to have any relevance to the timeliness of it.

In short, the Schwartzes fail to articulate a basis for estoppel here.

### III. Conversion

■ The Schwartzes present an alternative basis for affirming the trial court's grant of summary judgment. They argue that they have a claim for "true conversion" that is not preempted by the Carmack Amendment and, therefore, not affected by the nine-month claims-filing requirement. We agree.

Nearly all state claims against a carrier for lost or damaged goods are preempted by the Carmack Amendment.[32] But liability for separate harms, apart from the loss or damage of goods, is not preempted.[33] Accordingly, federal courts have stated that claims for "true conversion," i.e., where the carrier appropriates the property for its own use

---

[32]*Charleston & W. Carolina Ry. v. Varnville Furniture Co.*, 237 U.S. 597, 603, 35 S. Ct. 715, 59 L. Ed. 1137 (1915).

[33]*Rini v. United Van Lines, Inc.*, 104 F.3d 502, 506 (1st Cir.) (citing as examples claims for assault or intentional infliction of emotional distress), *cert. denied*, 522 U.S. 809 (1997).

or gain, are not preempted.[34] In general, such a conversion occurs where a bailee refuses to return property to its rightful owner except on satisfaction of some improper condition.[35]

The record supports the Schwartzes' contention that once Atlas found the Schwartzes' missing property, it withheld the property for its own purposes. Specifically, a December 28, 1995 letter from Mitchell to the Schwartzes states that Atlas authorized Mitchell to release the missing goods to the Schwartzes only if they signed a release confirming that they accepted the delivery as a full and final settlement of their claim.[36] The Schwartzes did not agree to this condition, and Atlas retained their property.[37] Atlas does not deny that it conditioned release of the property on the Schwartzes' relinquishment of their claim against Atlas. And this condition for release was unquestionably solely for Atlas' own gain. Therefore, the Schwartzes have articulated a conversion claim against Atlas that is not preempted by the Carmack Amendment.

Although Atlas is liable to the Schwartzes on the conversion claim, summary judgment on damages would not have been proper. There was no evidence before the trial court at the time it heard the matter to establish the proper measure or amount of damages for conversion. Therefore, we remand to the trial court for a determination of the amount of damages owed the Schwartzes for the conversion of their property.

[34]*Glickfeld v. Howard Van Lines, Inc.*, 213 F.2d 723, 727 (9th Cir. 1954); *Schultz v. Auld*, 848 F. Supp. 1497, 1502 (D. Idaho 1993).

[35]W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 100, 100 n.22 (5th ed. 1984); *Charles F. Curry & Co. v. Hedrick*, 378 S.W.2d 522 (Mo. 1964) (improper demand for waiver of all claims before release of property); *Boiseau v. Morrissette*, 78 A.2d 777 (D.C. 1951) (improper demand for dismissal of pending suit).

[36]Clerk's Papers at 123.

[37]After nearly six months had passed, Atlas offered to release the goods without attaching this coercive condition. Clerk's Papers at 125.

## IV. Judicial Notice

Atlas urges us to take judicial notice of its tariff that was incorporated by reference in the bill of lading. We decline to consider the tariff.

In reviewing a grant of summary judgment, we normally consider only those materials brought to the attention of the trial court.[38] We may consider additional evidence on review if (1) it is needed to fairly resolve the issues on review; (2) it would probably change the decision being reviewed; (3) it is equitable to excuse the party's failure to bring the evidence to the trial court's attention; (4) the remedy available thorough postjudgment motions is inadequate or unduly expensive; and (6) it would be inequitable to decide the issue on the basis of the evidence before the trial court.[39]

The tariff mirrors the ICC regulations that we considered in reaching our decision here. Because it offers us nothing new, we can fairly consider the issues on review without the tariff. Moreover, equity does not demand that Atlas be excused for its failure to present the tariff to the trial court on summary judgment.

## V. Attorney Fees

■■ ■■ Atlas contends that the trial court erred by awarding the Schwartzes their attorney fees at trial. Because of our resolution of the issues on appeal, we vacate the award and direct the trial court, on remand, to reconsider the amount of fees, on appeal and at trial.[40]

A trial court may award attorney fees only where there is a contractual, statutory, or recognized equitable basis for such an award.[41] Here, attorney fees are allowed by statute.

---

[38]RAP 9.12.

[39]RAP 9.11.

[40]*See Mahler v. Szucs*, 135 Wn.2d 398, 433-35, 957 P.2d 632 (1998).

[41]*Riss v. Angel*, 80 Wn. App. 553, 563, 912 P.2d 1028 (1996) (citing *Miotke v. City of Spokane*, 101 Wn.2d 307, 338, 678 P.2d 803 (1984)), *aff'd and remanded*, 131 Wn.2d 612, 934 P.2d 669 (1997).

Former 49 U.S.C. § 11711(d) stated that, in a court action to resolve a dispute between a shipper of household goods and a carrier, the shipper shall be awarded reasonable attorney fees if:

(1) the shipper submits a claim to the carrier within 120 days after the date the shipment is delivered; . . .

(2) the shipper prevails in such court action; and

(3)(A) *no dispute settlement program approved under this section was available for use by the shipper to resolve the dispute.*[42]

Atlas focuses on the italicized portion of the excerpt above, claiming that it had a dispute settlement program in place at the time of the Schwartzes' shipment.

Former 49 U.S.C. § 11711(d) must be read together with former 49 U.S.C. § 11711(b)(2), which requires a carrier to provide adequate notice of its dispute settlement program. Moreover, "[s]uch notice must be given to persons for whom household goods are to be transported by the carrier *before such goods are tendered to the carrier for transportation.*"[43] Atlas bears the burden of providing notice of its dispute settlement program to the Schwartzes.[44]

Here, Atlas failed to generate a genuine issue of material fact regarding the question of whether it gave the Schwartzes notice of its dispute settlement program. The affidavits upon which Atlas relies both state that Atlas had a dispute settlement program in effect in 1994. But it is undisputed that the Schwartzes tendered the goods to Atlas for shipment in 1990. Thus, the fact that Atlas had a settlement program in 1994 cannot establish that Atlas notified the Schwartzes of its existence in 1990.

---

[42](Emphasis added.)

[43]Former 49 U.S.C. § 11711(b)(2).

[44]*Drucker v. O'Brien's Moving & Storage Inc.*, 963 F.2d 1171, 1174 (9th Cir.1992) (explaining statutory requirements for award of attorney fees).

Because we reject Atlas' only challenge to the Schwartzes' entitlement to attorney fees under the Carmack Amendment, the propriety of awarding fees to the Schwartzes is no longer at issue. We direct the trial court to reconsider the amount of its award in view of our disposition of the appeal and make its determination whether to impose the full amount of fees awarded previously or grant a lesser amount.

The Schwartzes also request their attorney fees on appeal under RAP 18.1 and former 49 U.S.C. § 11711(d). On appeal, the Schwartzes have partially prevailed. Accordingly, they are entitled to some amount of attorney fees for this partial success. Again, we direct the trial court to determine the amount of fees on appeal.

We affirm in part and reverse in part the grant of summary judgment. We remand with instructions.

KENNEDY, C.J., and GROSSE, J., concur.