# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NCNG, LLC, a Washington limited liability company, | No. 58452-2-II |
| Appellant, | |
| v. | |
| CLARK COUNTY, WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

LEE, J. — NCNG, LLC appeals the trial court's order denying a land use petition. NCNG challenges a Shoreline Statement of Exemption that required NCNG to record a conservation covenant (Condition 6(k)). Specifically, NCNG argues (1) Condition 6(k) is preempted by the Shoreline Management Act (SMA) of 1971, chapter 90.58 RCW; (2) NCNG's proposed activities do not constitute "substantial development"; (3) Condition 6(k) unlawfully delegates the form and substance of conservation covenants; (4) Condition 6(k) conflicts with background principles of state property law; (5) Condition 6(k) is void for vagueness; and (6) Clark County (County) deprived NCNG of due process based on an inability to appeal the substance of a conservation covenant.

Because Condition 6(k) is not preempted by the SMA, does not unlawfully delegate the form and substance of conservation covenants, does not conflict with background principles of state property law, is not vague, and because the County did not deprive NCNG of due process, we affirm the trial court's order denying NCNG's land use petition.

No. 58452-2-II

FACTS

A.    BACKGROUND

NCNG, LLC owns parcel number 986053-102 (property) in Clark County.  The property is approximately 50 acres and is used primarily for agricultural purposes; specifically, the property is used for cattle grazing.

Whipple Creek, which is considered a shoreline,[1] flows through a floodplain on the northern portion of the property.  *See generally* RCW 90.58.010 et seq.; Clark County Code (CCC) 40.460.210.  Because Whipple Creek is a shoreline, it requires "a 200-foot-wide shoreline buffer extending from the Ordinary High Water Mark (OHWM) of Whipple Creek or to [the] edge of any associated wetland and/or floodplain."  Clerk Paper's (CP) at 7; RCW 90.58.030(2)(d); CCC 40.460.210.  Several tributaries on the property flow into Whipple Creek.

The property also contains wetlands, including a Category I riverine wetland and a Category III slope wetland.  There is a network of farm roads, including a wooden bridge over Whipple Creek, within the 200-foot shoreline buffer area.

In June 2022, NCNG applied for a "Shoreline Statement of Exemption" with the County.  Among other things, NCNG sought to replace the existing wooden bridge with a prefabricated

---

[1]  Shorelines include

> all of the water areas of the state, including reservoirs, and their associated shorelands, together with the lands underlying them; except (i) shorelines of statewide significance; (ii) shorelines on segments of streams upstream of a point where the mean annual flow is twenty cubic feet per second or less and the wetlands associated with such upstream segments; and (iii) shorelines on lakes less than twenty acres in size and wetlands associated with such small lakes.

RCW 90.58.030(2)(e); *see also* Clark County Code (CCC) 40.460.210.B.

steel bridge within the same footprint. The original bridge had "become unsafe and without replacement could fail, creating environmental impacts." CP at 7. In its application, NCNG stated:

> The proposed bridge replacement can be considered exempt as normal maintenance as well as a practice for normal and necessary farming and ranching activities. The existing bridge is utilized regularly by the applicant for farming and cattle movement which has become unsafe to cross. . . . [T]he original bridge deck will be removed, and the new bridge will be placed over the existing structure to avoid impact to the stream bank. The bridge replacement will be in the same footprint as the existing bridge and will not impact the bank. No work will occur in wetland or below the ordinary high water.

CP at 54.

On October 3, 2022, the County granted NCNG's application for an exemption. Specifically, the County stated:

> The proposed construction is exempt from a Shoreline Substantial Development Permit (SSDP) under [CCC] 40.460.230.B.2 (normal maintenance or repair of existing legally established structures or developments) and [CCC] 40.460.230.B.5 (Construction and practices normal or necessary for farming, irrigation, and ranching activities, including agricultural service roads and utilities on shorelands).

CP at 7. As part of the Statement of Exemption, the County included several conditions of approval. Condition 6(k) stated:

> Pursuant to CCC 40.450.030.F, a conservation covenant shall be recorded no later than 60 days after issuance of this permit in a form approved by the Prosecuting Attorney as adequate to incorporate the other restrictions of this section and to give notice of the requirement to obtain a wetland and/or habitat permit prior to engaging in regulated activities within a wetland, wetland buffer, priority habitat area, or mitigation area *(Wetland and Habitat Finding 13)*.

CP at 20 (italics in original).

The Statement of Exemption also contained a section titled "Shoreline Permit Appeal Process." CP at 20. The section stated that any party to the project could "appeal any aspect of the decision to the Superior Court" within 14 days of the decision. CP at 20.

No. 58452-2-II

B.    PROCEDURAL HISTORY

On October 12, 2022, NCNG filed a land use petition in superior court challenging Condition 6(k). NCNG alleged several errors within Condition 6(k), including that CCC 40.450.030.F was preempted by the SMA because NCNG's proposed activities did not constitute a "'development'" or "'substantial development'"; CCC 40.450.030.F unlawfully delegated the form and content of the conservation covenant to the prosecuting attorney "without procedural safeguards to control arbitrary administrative action"; Condition 6(k) conflicted with principles of state property law; CCC 40.450.030.F was void for vagueness; and the Statement of Exemption deprived NCNG of due process. CP at 4. NCNG requested the reversal and deletion of Condition 6(k) from the Statement of Exemption.

In April 2023, the superior court held a hearing. NCNG argued in part that the Statement of Exemption exempted it from permitting requirements and CCC 40.450.030.F allowed the County to "condition precisely the same activity allowed unconditionally under RCW 90.58.030(3)." Verbatim Rep. of Proc. (VRP) at 5. In response, the County argued that the bridge replacement constituted a "development." VRP at 18. The County also argued that a project's exemption from a substantial development permit does not exempt it from review and regulation under the local shoreline master program (SMP).

The superior court denied NCNG's land use petition. In the order denying the land use petition, the superior court stated that NCNG "failed to demonstrate that one of the six standards identified in RCW 36.70C.130(1) has been met." CP at 1343.

NCNG appeals.

4

ANALYSIS

A.    STANDARD OF REVIEW

We review land use decisions under the Land Use Petition Act (LUPA), chapter 36.70C RCW. *Fuller Style, Inc. v. City of Seattle*, 11 Wn. App. 2d 501, 507, 454 P.3d 883 (2019); *see* RCW 36.70C.030. "An appellate court is in the same position as the superior court when reviewing a LUPA petition." *Ellensburg Cement Prods., Inc. v. Kittitas County*, 179 Wn.2d 737, 742, 317 P.3d 1037 (2014). The petitioner bears the burden of establishing one of several enumerated standards set forth in RCW 36.70C.130 to obtain relief. RCW 36.70C.130(1); *Fuller Style*, 11 Wn. App. 2d at 507.

Relevant here, a court may grant relief to a petitioner if:

> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> . . . . or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

Whether the petitioner has met its burden under RCW 36.70C.130(1)(b) is reviewed de novo. *Fuller Style*, 11 Wn. App. 2d at 507. Courts need not always show deference to a local entity's interpretation of the law; deference is appropriate when the local entity shows that its

interpretation "'was a matter of preexisting policy.'" *Ellensburg Cement Prods.*, 179 Wn.2d at 753 (quoting *Sleasman v. City of Lacey*, 159 Wn.2d 639, 647, 151 P.3d 990 (2007)).

Under RCW 36.70C.130(1)(c), we review the land use decision for substantial evidence. *Lauer v. Pierce County*, 173 Wn.2d 242, 252-53, 267 P.3d 988 (2011). "[T]here must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true." *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 829, 256 P.3d 1150 (2011). Facts and inferences are viewed in a light "most favorable to the party that prevailed in the highest forum exercising fact-finding authority." *Id.* at 828-29.

A petitioner establishes its burden under RCW 36.70C.130(1)(d) if "'[t]he land use decision is a clearly erroneous application of the law to the facts.'" *Fuller Style*, 11 Wn. App. 2d at 507 (internal quotation marks omitted) (quoting *Ellensburg Cement Prods.*, 179 Wn.2d at 743). This means that "'the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Phoenix Dev.*, 171 Wn.2d at 829). Finally, we review RCW 36.70C.130(1)(f) de novo. *Phoenix Dev.*, 171 Wn.2d at 828.

Questions of statutory interpretation are also reviewed de novo. *Nelson v. P.S.C., Inc.*, 2 Wn.3d 227, 233, 535 P.3d 418 (2023). The objective of statutory interpretation is to ascertain and carry out the legislature's intent. *Royal Oaks Country Club v. Dep't of Revenue*, 2 Wn.3d 562, 568, 541 P.3d 336 (2024). "If the meaning of the statute is plain on its face, we give effect to that plain meaning as an expression of legislative intent." *Id.* Plain language is discerned from "the ordinary meaning of the language in the context of related statutory provisions, the entire statute, and related statutes." *Id.* Courts may turn to the dictionary for undefined statutory terms. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 528, 243 P.3d 1283 (2010).

B.  SHORELINE MANAGEMENT ACT AND CLARK COUNTY'S SHORELINE MASTER PROGRAM

1.  Legal Principles

a.  Washington Shoreline Management Act

The SMA provides "for the management of the shorelines of the state" by balancing preservation of the state's shorelines with recognition of private property rights. RCW 90.58.020; *see generally Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 203, 884 P.2d 910 (1994) (stating the SMA "contemplates protecting against adverse effects to the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life, while protecting generally the public right of navigation and corollary rights incidental thereto"). The SMA applies to all state shorelines and is broadly construed. RCW 90.58.040; *Buechel*, 125 Wn.2d at 203-04.

The SMA directs local governments to cooperate with the Department of Ecology (Department) to develop shoreline "master program[s]." RCW 90.58.030(1)(a), .050, .080, .090; *see* WAC 173-26-010. The local SMPs must be consistent with guidelines developed by the Department and within the SMA itself. RCW 90.58.050, .080, .100, .140; WAC 173-26-191; *see also* RCW 90.58.200 ("The department and local governments are authorized to adopt such rules as are necessary and appropriate to carry out the provisions of this chapter."). SMPs must contain certain elements outlined in the SMA and associated regulations. RCW 90.58.100; WAC 173-26-191. Further, the SMPs, once adopted by the Department, "shall constitute use regulations for the various shorelines of the state." RCW 90.58.100(1).

The SMA provides that a "development shall not be undertaken on the shorelines of the state unless it is consistent with the policy of [the SMA] and, after adoption or approval, as appropriate, the applicable guidelines, rules, or master program." RCW 90.58.140(1).

Additionally, a "substantial development shall not be undertaken on shorelines of the state without first obtaining a permit from the government entity having administrative jurisdiction under this chapter." RCW 90.58.140(2). Such permits are called "substantial development permits." *See* RCW 90.58.140, .143.

The SMA contemplates different kinds of permits. *See* RCW 90.58.140. A permit "means any substantial development, variance, conditional use permit, or revision authorized under chapter 90.58 RCW." WAC 173-27-030(13).

A "development" is a

> use consisting of the construction or exterior alteration of structures; dredging; drilling; dumping; filling; removal of any sand, gravel, or minerals; bulkheading; driving of piling; placing of obstructions; or any project of a permanent or temporary nature which interferes with the normal public use of the surface of the waters overlying lands subject to this chapter at any state of water level.

RCW 90.58.030(3)(a).

A "substantial development" means "any development of which the total cost or fair market value exceeds five thousand dollars, or any development which materially interferes with the normal public use of the water or shorelines of the state." RCW 90.58.030(3)(e). Under the SMA, specific kinds of projects are excluded from the definition of "substantial development." RCW 90.58.030(3)(e). For instance, "[n]ormal maintenance or repair of existing structures or developments, including damage by accident, fire, or elements" and "[c]onstruction and practices normal or necessary for farming, irrigation, and ranching activities, including agricultural service roads and utilities on shorelands" are not considered substantial developments—in other words, they are exempt. RCW 90.58.030(3)(e)(i), (iv).

"Exempt" developments "are those set forth in WAC 173-27-040 and RCW 90.58.030(3)(e), 90.58.140(9), 90.58.147, 90.58.355, and 90.58.515 which are not required to obtain a substantial development permit but which must otherwise comply with applicable provisions of the [SMA] and the local [SMP]." WAC 173-27-030(7). Exemptions must be construed narrowly. WAC 173-27-040(1)(a). Further,

[a]n exemption from the substantial development permit process is not an exemption from compliance with the [SMA] or the local [SMP], nor from any other regulatory requirements. To be authorized, all uses and developments must be consistent with the policies and provisions of the applicable master program and the [SMA].

WAC 173-27-040(1)(b). Local governments "may attach conditions to the approval of exempted developments and/or uses as necessary to assure consistency of the project with the [SMA] and the local [SMP]." WAC 173-27-040(1)(e).

b.      Clark County Shoreline Master Program

Clark County's SMP is codified under the CCC 40.460 et seq. The County's SMP applies to "all of the shorelands and waters within the unincorporated Clark County limits that fall under the jurisdiction of [the SMA]." CCC 40.460.210.A. The County's shoreline jurisdiction includes "[t]hose lands extending two hundred (200) feet in all directions as measured on a horizontal plane from the ordinary high water mark (OHWM)." CCC 40.460.210.A.1. Whipple Creek has shorelines subject to the County's SMP. CCC 40.460.210.B.

All uses and development activities occurring within the shoreline jurisdiction must be consistent with the County's SMP, "regardless of whether a shoreline permit, statement of exemption, shoreline variance, or shoreline conditional use is required." CCC 40.460.200. The County's SMP expressly delineates circumstances when applicants are not required to obtain a

9

shoreline permit, letter of exemption, or other local government review. Such circumstances include certain kinds of remedial actions, Department of Transportation projects, and boatyard improvements. CCC 40.460.220.C (citing WAC 173-27-044).

An applicant who wishes to construct a "substantial development"[2] must obtain a "substantial development permit" from the County's Shoreline Administrator,[3] "unless the use or development is specifically identified as exempt from a substantial development permit, in which case a letter of exemption is required." CCC 40.460.220.A.1.

Under the County's SMP, exemptions from "substantial development" include:

2.      Subject to the provisions of Section 40.460.250, normal maintenance or repair of existing legally established structures or developments, including those that have been damaged by accident, fire, or elements. The features of the repaired structure or development, including but not limited to its size, shape, configuration, location, and external appearance, must be comparable to the original structure or development, and the repair must not cause substantial adverse effects to shoreline resources or environment. The replacement of demolished existing single-family residences and their appurtenances is not considered normal maintenance and repair.

. . . .

5.      Construction and practices normal or necessary for farming, irrigation, and ranching activities, including agricultural service roads and utilities on shorelands, and the construction and maintenance of irrigation structures including but not limited to head gates, pumping facilities, and irrigation channels.

---

[2] The County's SMP adopts the SMA's definition of "substantial development." CCC 40.460.220.A.1; RCW 90.58.030(3)(e). The County's SMP also adopts the SMA's definition of "development." CCC 40.460.800; RCW 90.58.030(3)(a).

[3] The County's Shoreline Administrator is the responsible official or their designee for the County's SMP. CCC 40.460.800. Since the Shoreline Administrator is a county employee, this opinion will refer to the County and the Shoreline Administrator interchangeably.

CCC 40.460.230.B.2, .B.5.

An applicant who wishes to claim an exemption from a substantial development permit may apply to the County Shoreline Administrator. CCC 40.460.230.C.1. The Shoreline Administrator is authorized to grant or deny a statement of exemption based on the exempt uses and developments specifically listed in CCC 40.460.230.B. CCC 40.460.230.C.2. Additionally, statements of exemption "may contain conditions and/or mitigating measures of approval to achieve consistency and compliance with the provisions of this [SMP] and the [SMA]." CCC 40.460.230.C.3.

The County's SMP also protects "critical areas" located within the shoreline jurisdiction. CCC 40.460.530.A.1. Protected critical areas include habitat conservation areas and wetlands. CCC 40.460.530.B.4, B.5. While habitat conservation areas[4] and wetlands[5] have their own use regulations within the local code, if such areas fall within the shoreline jurisdiction, the SMP applies. CCC 40.460.530.A.2; *see* CCC 40.440 et seq., CCC 40.450 et seq.

While the SMP applies to habitat conservation areas and wetlands within its shoreline jurisdiction, the SMP incorporates standards from the habitat conservation and wetland regulations. *See generally* CCC 40.460.530.A.2, .F, .G. For instance, if the Shoreline Administrator determines the existence of a wetland within the project area, a wetland delineation,

---

[4] Habitat conservation areas include riparian priority habitats and certain habitat and species areas identified by the Department of Fish and Wildlife and local government. CCC 40.440.010.C.

[5] Wetlands are "areas that are inundated or saturated by surface or groundwater at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs and similar areas." CCC 40.100.070.

as defined in CCC 40.450.030, is required. CCC 40.460.530.G.1.c, G.1.d. The procedure for determining wetland boundaries is provided in CCC 40.450.030.D. Furthermore, "[w]etland reviews under [the SMP] shall be according to the application, processing, preliminary approval, and final approval procedures set out in Section 40.450.040(F) through (I) and are part of the approvals required under [the SMP]." CCC 40.460.530.G.1.i. CCC 40.450.040.I.1.c provides that the County shall issue final approval of a wetland permit upon recording of a conservation covenant as required by CCC 40.450.030.F.3.

In the event of a conflict between the SMP and other county policies, "unless otherwise stated, the provisions that provide the most protection to shoreline ecological processes and functions shall prevail." CCC 40.460.170.D.

### c. Preemption

Courts presume municipal ordinances are valid. *Viking JV, LLC v. City of Puyallup*, 22 Wn. App. 2d 1, 16, 509 P.3d 334 (2022). An ordinance is invalid if it directly conflicts with a state statute. *Id.* Conflict occurs when a local regulation "'permits what state law forbids or forbids what state law permits.'" *Id.* at 17 (quoting *State v. Kirwin*, 165 Wn.2d 818, 825, 203 P.3d 1044 (2009)). However, no conflict will be found if the statute and ordinance can be read in harmony. *Watson v. City of Seattle*, 189 Wn.2d 149, 171, 401 P.3d 1 (2017). Whether an ordinance conflicts with state law is a question of law we review de novo. *SkyCorp Ltd. v. King County*, ___ Wn. App. 2d ___, 543 P.3d 223, 230 (2024).

### 2. Activities Do Not Constitute "Substantial Development"

NCNG argues that the County erred in adopting Condition 6(k) because "the regulatory threshold" amount of the project under RCW 90.58.030(3)(e) is not satisfied, and therefore,

NCNG's proposed activities do not constitute "'substantial development.'" Br. of Appellant at 15. The County agrees that NCNG's proposed activities on the property do not constitute "'substantial development'" and argues that the regulatory threshold is "irrelevant." Br. of Resp't at 26. We agree with the County and decline to address NCNG's argument.

NCNG expounds on why its proposed activities will not exceed a cost threshold amount articulated in RCW 90.58.030(3)(e).[6] But, for the reasons discussed in the preceding section and as established in the record, NCNG's proposed project does not constitute a substantial development. Because NCNG's activities do not constitute substantial developments and because the County does not dispute this fact, we need not address NCNG's threshold amount argument.

3.     CCC 40.450.030.F is Not Preempted by the SMA

NCNG argues that the County erred in adopting Condition 6(k), the requirement to record a conservation covenant, in the Statement of Exemption because CCC 40.450.030.F is preempted by RCW 90.58.140. Specifically, NCNG challenges Condition 6(k) as it relates to the replacement of the bridge over Whipple Creek. NCNG contends that the "[r]emoval and replacement of the existing wood bridge does not constitute development . . . and, therefore, cannot constitute substantial development" and thus is exempt from any permit requirements. Br. of Appellant at

---

[6] RCW 90.58.030(3)(e) states:

"Substantial development" means any development of which the total cost or fair market value exceeds five thousand dollars, or any development which materially interferes with the normal public use of the water or shorelines of the state. The dollar threshold established in this subsection (3)(e) must be adjusted for inflation by the office of financial management every five years, beginning July 1, 2007, based upon changes in the consumer price index during that time period.

11. NCNG asserts that because of NCNG's "exempt" project status, Condition 6(k) purportedly conditions activity that is "allowed unconditionally" under the SMA and constitutes an erroneous interpretation of law. Reply Br. of Appellant at 2.

The County argues that NCNG's proposed development is not exempt from the SMP and the SMP authorizes the imposition of Condition 6(k) in the Statement of Exemption. Specifically, the County contends that NCNG's proposed bridge replacement constitutes a "development" under the SMA and while the bridge replacement is exempt from the requirements of a *substantial development permit*, it is not exempt from regulation under the SMP generally. The County points to the SMP provisions that "expressly authorize the condition of the conservation covenant." Br. of Resp't at 16. We agree with the County.

Because NCNG argues the imposition of Condition 6(k) is an erroneous interpretation of the law under LUPA, our review is de novo. RCW 36.70C.130(1)(b). Here, the record shows that NCNG proposed projects, including the replacement of the bridge over Whipple Creek, on property that falls within the shoreline jurisdiction. CCC 40.460.210.A, .B. Because the property falls within the shoreline jurisdiction, the County's SMP, along with the SMA, applies. CCC 40.460.210.A.

The County's SMP states that "*all* uses and development activities in shorelines" shall be carried out in a manner consistent with the SMP and SMA—specifically RCW 90.58.140(1)— "regardless of whether a shoreline permit[] [or] statement of exemption . . . is required." CCC 40.460.200 (emphasis added). NCNG proposed to replace a bridge that extends over Whipple Creek. Specifically, NCNG would

14

> replace existing wood bridge with a prefabricated street bridge. . . . The wood planks on the existing bridge will be removed, and the support joists will be left in place to avoid impact to the bank. The prefabricated bridge will be placed over the existing structure. The width of the new bridge will not exceed the existing bridge width and no work will occur below the ordinary high-water mark of Whipple Creek.

CP at 53.

NCNG argues that the bridge replacement does not constitute a development or substantial development. NCNG does not support its assertion that the bridge replacement is not a "development" under RCW 90.58.030(3)(a).[7]

Based on NCNG's description of the proposed project, the bridge replacement falls within the definition of "development." Under *both* the SMP and SMA, a "development" is "a use consisting of the construction or exterior alteration of structures." CCC 40.460.800; RCW 90.58.030(3)(a). "Alteration" is not defined by statute, but the dictionary defines "alteration" as "a change or modification made on a building that does not increase its exterior dimensions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 63 (2002); *Lake*, 169 Wn.2d at 528.

Here, the new bridge width "will not exceed the existing bridge width." CP at 53. The bridge will be modified or changed based on the removal of the original wood deck and the overall replacement with the prefabricated bridge. The proposed bridge activity is clearly an exterior alteration of a structure, and accordingly, a development.

---

[7] Without saying so directly, NCNG appears to argue that *Cowiche Canyon Conservancy v. Bosley* is analogous. *See generally Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 828 P.2d 549 (1992). In *Cowiche Canyon*, the court held that the total removal of abandoned railroad trestles is not "alteration of the exterior of a structure" within the meaning of "development" under RCW 90.58.030(3)(a). *Id.* at 813. To the extent that NCNG argues that the removal of the wooden bridge planks and replacement with a prefabricated bridge is the same as the *total removal* of the railroad trestles, the argument is unpersuasive.

However, the parties agree that the bridge project is not a "substantial development" under the SMP and SMA. The SMA provides that a "substantial development" excludes "[n]ormal maintenance or repair of existing structures or developments" and "[c]onstruction and practices normal or necessary for farming, irrigation, and ranching activities." RCW 90.58.030(3)(e)(i), (iv); *see* CCC 40.460.220.A.1. The record shows that the bridge will be replaced and that it would be unsafe otherwise. Arguably, this is within "normal maintenance or repair of existing structures." As such, the bridge project qualifies for a statement of exemption from a substantial development permit. CCC 40.460.230.B. And NCNG applied for an exemption from a substantial development permit pursuant to CCC 40.460.230.B.2 ("normal maintenance or repair of existing legally established structures or developments") and.B.5 ("[c]onstruction and practices normal or necessary for farming, irrigation, and ranching activities"). Also, the County granted NCNG a statement of exemption from a substantial development permit based on CCC 40.460.230.B.2 and .B.5.

NCNG appears to argue that RCW 90.58.140(1) and (2) exempt all developments that are not substantial developments from the SMA. RCW 90.58.140 states:

(1) A development shall not be undertaken on the shorelines of the state unless it is consistent with the policy of this chapter and, after adoption or approval, as appropriate, the applicable guidelines, rules, or master program.

(2) A substantial development shall not be undertaken on shorelines of the state without first obtaining a permit from the government entity having administrative jurisdiction under this chapter.

How either subsection (1) or subsection (2) can be construed as exempting *all* developments except substantial developments from the SMA is not clear, particularly when the statute states *the exact*

16

*opposite*.[8]  Indeed, any development, be it a "development" or "substantial development," as defined by the SMA, "shall not be undertaken . . . unless it is consistent with the policy of this chapter and . . . the applicable guidelines, rules, or master program."  RCW 90.58.140(1).

NCNG's argument appears to be premised on the faulty notion that an exemption from a substantial development permit is exemption from *any* permit or regulation.[9]  NCNG's argument appears to cherry-pick statutory language and reads it in isolation.  However, in interpreting a statute, courts must look at the statutory scheme as a whole.  *See Royal Oaks Country Club*, 2 Wn.3d at 568.  Substantial development permits are not the only permits subject to regulation under the SMP or SMA.  *See* RCW 90.58.140.  A "permit" "means any substantial development, variance, conditional use permit, or revision authorized under chapter 90.58 RCW."  WAC 173-27-030(13).

---

[8]  We note that the SMA does provide explicit exemptions in specific circumstances, none of which are applicable or argued here.  RCW 90.58.355.

[9]  In its briefing and during oral argument, NCNG cited to *Ritchie v. Markley*, 23 Wn. App. 569, 597 P.2d 449 (1979), and *Putnam v. Carroll*, 13 Wn. App. 201, 534 P.2d 132 (1975), for the proposition that the bridge replacement project is exempt from the SMA.  *See* Wash. Ct. of Appeals oral argument, *NCNG, LLC v. Clark County*, No. 58452-2-II (Apr. 29, 2024), *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.  However, *Ritchie* and *Putnam* are inapplicable.

In *Ritchie*, at issue was a *substantial development permit* and *substantial development permit requirements*.  23 Wn. App. at 572-73.  A county ordinance required what was functionally a substantial development permit in contravention to explicit exemptions—and exemptions that Ritchie qualified for—within the SMA.  *Id.* at 571.  Similarly, in *Putnam*, Putnam qualified for an explicit exemption from certain *permit requirements* under the 1975 version of the SMA—requirements that the local county had attempted to impose.  13 Wn. App. at 204.  Neither case supports NCNG's argument that the bridge replacement is exempt from the SMA.

NCNG's argument is also in direct contravention of the Department's regulations regarding permit and enforcement procedures for the SMA:

> An exemption from the substantial development permit process *is not an exemption from compliance with the [SMA] or the local [SMP], nor from any other regulatory requirements*. To be authorized, *all uses and developments* must be consistent with the policies and provisions of the applicable master program and the [SMA].

WAC 173-27-040(1)(b) (emphasis added). Moreover, an "exempt" development as set forth in RCW 90.58.030(3)(e)—which NCNG argues applies—is one that is "not required to obtain a substantial development permit *but which must otherwise comply with applicable provisions of the [SMA] and the local [SMP].*" WAC 173-27-030(7) (emphasis added). Contrary to NCNG's contention, NCNG's project is not completely exempt from regulation under either the SMA or the SMP.

NCNG challenges Condition 6(k)'s requirement that NCNG record a conservation covenant:

> [A] conservation covenant shall be recorded . . . in a form approved by the Prosecuting Attorney as adequate to incorporate the other restrictions of this section and to give notice of the requirement to obtain a wetland . . . permit prior to engaging in regulated activities within a wetland [or] wetland buffer.

CP at 20. We hold that NCNG's challenge fails.

First, the County is authorized by the SMP to impose conditions within statements of exemption "to achieve consistency and compliance with the provisions of this [SMP] and the [SMA]." CCC 40.460.230.C.3. Further, the SMA's regulations state that local governments "may attach conditions to the approval of exempted developments and/or uses as necessary to assure consistency of the project with the [SMA] and the local [SMP]." WAC 173-27-040(1)(e). Thus,

the presence of Condition 6(k) in the Statement of Exemption, in and of itself, is consistent with the dictates of both the SMP and the SMA.

NCNG also argues that Condition 6(k), imposed pursuant to CCC 40.450.030.F, is an attempt by the County to "bootstrap" the "Habitat Ordinance."[10] Br. of Appellant at 13; *see* CCC 40.450.010.C.1.a, C.1.c; CCC 40.460.530.A.2. However, NCNG fails to address provisions in the SMP, specifically in CCC 40.460.530, which incorporate standards from the Habitat Conservation Ordinance and the Wetland Protection Ordinance.[11] *See generally* CCC 40.460.530.F, .G.

The record shows the presence of wetlands and habitat conservation areas, coinciding with the shoreline jurisdiction, on the property. As previously stated, because of the shoreline jurisdiction, the SMP applies, not the Habitat Conservation Ordinance or Wetland Protection Ordinance. However, when a property within the shoreline jurisdiction contains a wetland, which is the case here, wetland reviews under the SMP "*shall* be according to the application, processing, preliminary approval, and final approval procedures set out in Section 40.450.040(F) through (I) and are part of the approvals required under this Program." CCC 40.460.530.G.1.i (emphasis added). Final approval under CCC 40.450.040.I.1.c requires the recording of a conservation covenant pursuant to CCC 40.450.030.F.3. Therefore, NCNG's argument is unpersuasive.

With regard to NCNG's assertion of preemption, RCW 90.58.140 does not prohibit the attachment of conditions to land use applications. A conflict occurs only when an ordinance

---

[10] We note that NCNG misidentified 40.450.030.F as being part of the Habitat Conservation Ordinance. The Habitat Conservation Ordinance is found in CCC 40.440 et seq.

[11] We note that NCNG does not challenge other conditions attached to the Statement of Exemption, such as Condition 6(j), which impose other standards pursuant to CCC 40.450.030.F.

permits what state law prohibits or prohibits what state law permits. *Viking JV*, 22 Wn. App. 2d at 17.

Here, RCW 90.58.140 can be read in harmony with CCC 40.450.030.F because the ordinance is "consistent with the policy of the [SMA] and . . . the applicable guidelines, rules, or [SMP]." RCW 90.58.140(1); *Watson*, 189 Wn.2d at 171. Because no conflict exists, CCC 40.450.030.F is not preempted by the SMA and the imposition of Condition 6(k) does not constitute an erroneous interpretation of the law.

NCNG also briefly argues that Condition 6(k) "is not supported by evidence that is substantial . . . because no aspect of the proposal is nonexempt." Br. of Appellant at 15. Facts and inferences are viewed in a light "most favorable to the party that prevailed in the highest forum exercising fact-finding authority." *Phoenix Dev.*, 171 Wn.2d at 828-29. Under the substantial evidence standard, "there must be a sufficient quantum of evidence in the record to persuade a reasonable person that the declared premise is true." *Id.* at 829.

Here, the County prevailed at the trial court, so we view facts and inferences in a light most favorable to the County. *Id.* at 828-29. As discussed above, an exemption from a substantial development permit is not a complete exemption from the SMA or SMP. The record establishes that the property falls within the County's shoreline jurisdiction and contains both wetlands and a habitat conservation area.[12] Thus, the SMP, along with the standards incorporated from the Wetland Protection Ordinance and Habitat Conservation Ordinance, applies. The SMP requires a

---

[12] NCNG does not argue that there are no wetlands or habitat conservation areas within the designated project area.

conservation covenant in this case. Condition 6(k) is supported by substantial evidence. *See* RCW 36.70C.130(1)(c).

4.     Unlawful Delegation

NCNG argues that the County erred in adopting Condition 6(k) because CCC 40.450.030.F "unlawfully delegates the form and content of conservation covenants to the prosecuting attorney without procedural safeguards to control arbitrary administrative action." Br. of Appellant at 17. The County argues that there is no delegation within CCC 40.450.030.F.3, and the "ordinance simply provides that the prosecuting attorney must approve the form of the covenant." Br. of Resp't at 28. The County further argues that even if CCC 40.450.030.F delegated legislative authority, CCC 40.450.030.F provides the requisite safeguards. We agree with the County that there has been no delegation.[13]

a.     Legal principles

"Municipal authorities cannot exercise powers except those expressly granted or those necessarily implied from granted powers." *Responsible Growth *NE Wash. v. Pend Oreille Pub. Util. Dist. No. 1*, 13 Wn. App. 2d 517, 532, 466 P.3d 1122, *review denied*, 196 Wn.2d 1027 (2020). Generally, a municipal authority may not delegate its power absent a specific statutory authorization. *Mun. of Metro. Seattle v. Div. 587, Amalgamated Transit Union*, 118 Wn.2d 639, 643, 826 P.2d 167 (1992).

"A delegation of legislative authority is constitutional if the [l]egislature (1) defines what is to be done and who is to do it; and (2) provides procedural safeguards." *Id.* at 648. Generally,

---

[13] Because we hold that there has been no delegation, we do not address whether there was an unlawful delegation.

ministerial acts may be delegated while discretionary or quasi-judicial acts may not. *Roehl v. Pub. Util. Dist. No. 1 of Chelan County*, 43 Wn.2d 214, 240, 261 P.2d 92 (1953). Discretionary acts involve the exercise of discretion or judgment. *SEIU Healthcare 775NW v. Gregoire*, 168 Wn.2d 593, 600, 229 P.3d 774 (2010). Ministerial acts, on the other hand, "have been specifically held to include gathering, collating, and presenting facts." *Jeffers v. City of Seattle*, 23 Wn. App. 301, 309, 597 P.2d 899 (1979).

RCW 90.58.140(3) provides that local governments must "establish a program, consistent with rules adopted by the department, for the administration and enforcement of the permit system provided in this section. The administration of the system so established shall be performed exclusively by the local government." Further, "local governments are authorized to adopt such rules as are necessary and appropriate to carry out the provisions of this chapter." RCW 90.58.200.

The SMA regulations provide that local governments have "latitude . . . to establish procedural systems based on local needs and circumstances." WAC 173-27-020. Additionally, "local government shall have the primary responsibility for initiating the planning required by the [SMA] and administering the [SMP] consistent with the policy and provisions of the [SMA], whereas the department shall act primarily in a supportive and review capacity." WAC 173-27-020. "Local government" includes "any county, incorporated city, or town which contains within its boundaries any lands or waters subject to this chapter." RCW 90.58.030(1)(d); *see* WAC 173-27-030(10). Prosecuting attorneys represent counties and serve as legal advisers to county officers "in all matters relating to their official business." RCW 36.27.020(2); *see also* RCW 36.27.005.

CCC 40.450.030.F is a provision in the County's SMP. CCC 40.450.030.F provides standard requirements for developments within a wetland area. CCC 40.450.030.F states:

Any action granting or approving a development permit application shall be conditioned on all the following:

1. Marking Buffer During Construction. The location of the outer extent of the wetland buffer shall be marked in the field and such markings shall be maintained throughout the duration of the permit.

2. Permanent Marking of Buffer Area. A permanent physical demarcation along the upland boundary of the wetland buffer area shall be installed and thereafter maintained. Such demarcation may consist of logs, a tree or hedge row, fencing, or other prominent physical marking approved by the responsible official. In addition, small signs shall be posted at an interval of one (1) per lot or every one hundred (100) feet, whichever is less, and perpetually maintained at locations along the outer perimeter of the wetland buffer approved by the responsible official worded substantially as follows:

   Wetland and Buffer –
        Please retain in a natural state

3. A conservation covenant shall be recorded in a form approved by the prosecuting attorney as adequate to incorporate the other restrictions of this section and to give notice of the requirement to obtain a wetland permit prior to engaging in regulated activities within a wetland or its buffer.

  b.  No delegation in CCC 40.450.030.F.3

NCNG contends that it does not dispute the Shoreline Administrator's *ability* to delegate; rather, NCNG challenges "delegation without procedural safeguards to control arbitrary action." Reply Br. of Appellant at 7.

As a threshold matter, local governments like the County have express authorization from the legislature to administer and enforce the SMP's "permit system." RCW 90.58.140(3); RCW 90.58.030(1)(d). The responsibility of administration rests exclusively with the County, and the County has latitude to establish a system based on local needs and circumstances. RCW 90.58.140(3); WAC 173-27-020. The County is authorized to adopt rules "as are necessary and

23

appropriate to carry out the provisions" of the SMA. RCW 90.58.200. Here, in compliance with RCW 90.58.140(3) and .200, the County adopted its local SMP to carry out the provisions of the SMA and determined that the prosecuting attorney should approve the form of conservation covenants. *See* CCC 40.460 et seq.; CCC 40.450.030.F.3.

When a qualifying wetland is present, CCC 40.450.030.F.3 requires an applicant to record a conservation covenant that (1) incorporates the other restrictions listed in CCC 40.450.030.F and (2) gives notices of the requirement to obtain a wetland permit. The prosecuting attorney, a County representative, must confirm the covenant does these two things. CCC 40.450.030.F.3. Because the County has express authorization to administer and enforce the SMP's permit system, the administration rests exclusively with the County, and the prosecuting attorney is a County representative, there is no delegation in CCC 40.450.030.F.3.

NCNG contends that any determination that a covenant is adequate "involves not merely form but substantive content." Reply Br. of Appellant at 8. According to NCNG, this runs the risk of arbitrary action, particularly because "key regulatory subject matter has been delegated to a future determination after final decision without any process for appeal or other review." Reply Br. of Appellant at 8. This argument erroneously assumes that a delegation has occurred.

NCNG also fails to identify how a conservation covenant that incorporates restrictions in CCC 40.450.030 and gives notice of a requirement to obtain a wetland permit would potentially be arbitrary and not subject to appeal or other review. NCNG makes conclusory statements without analyzing what is actually required in a conservation covenant.

CCC 40.450.030.F requires an applicant to identify wetland buffer areas. *See* CCC 40.450.030.F.1, F.2. A wetland buffer area is determined in accordance with specific criteria,

depending on the wetland rating, habitat score, and projected land use, all outlined in CCC 40.450.030.E.

The delineated wetland boundary is determined "through the performance of a field investigation utilizing the methodology contained in the Wetlands Delineation Manual."[14] CCC 40.450.030.D.1. A delineation report must be submitted to the Department and contain highly specific pieces of information. CCC 40.450.030.D.2. Notably,

> [t]he wetland delineation is the responsibility of *the applicant*. The responsible official shall verify the accuracy of the boundary delineation within ten (10) working days of receiving the delineation report. This review period may be extended when excessively dry conditions prohibit the confirmation of the wetland delineation. If the delineation is found to not accurately reflect the boundary of the wetland, the responsible official shall issue a report, within twenty (20) working days of receiving the applicant's delineation report, citing evidence (for example, soil samples) that demonstrates where the delineation is in error. *The applicant may then either revise the delineation and submit another report or administratively appeal*.

CCC 40.450.030.D.4 (emphasis added).

Thus, it is the *applicant*, or NCNG here, who would determine the wetland delineation that serves as the foundation of the wetland buffer that is incorporated into the conservation covenant; thus, NCNG determines the substance of the covenant's contents. The responsible official must

---

[14] "Wetlands Delineation Manual" means "the wetland delineation procedure described in WAC 173-22-035." CCC 40.100.070. WAC 173-22-035 provides:

> Identification of wetlands and delineation of their boundaries pursuant to this chapter shall be done in accordance with the approved federal wetland delineation manual and applicable regional supplements. Review copies are available at the department of ecology headquarters and regional offices. Links to the online versions are accessible through the department of ecology wetlands web page. Copies of the original published manual are available through the U.S. Army Corps of Engineers National Technical Information Service.

only *verify* the applicant's accuracy of the wetland boundary delineation. CCC 40.450.030.D.4. If the responsible official and the applicant disagree over the wetland delineation, the applicant may administratively appeal. CCC 40.450.030.D.4. Accordingly, NCNG's argument that the prosecuting attorney determines the substance of a conservation covenant without procedural safeguards and that there is no way to appeal or review a conservation covenant is unpersuasive.

CCC 40.450.030.F does not delegate the form and content of conservation covenants to the prosecuting attorney. Further, NCNG's argument that no procedural safeguards exist is unpersuasive; the County's SMP explicitly provides a way for NCNG to administratively appeal the substance of a conservation covenant.

5.    Background Principles of State Property Law

NCNG argues that Condition 6(k) violates "background principles of state property law" because a "conservation covenant will continue to deny present and future owners of vested rights to develop [land] after wetlands have moved or receded." Br. of Appellant at 18,19. We disagree.

a.    Legal principles

The vested rights doctrine provides that land use applications vest on the date of submission and entitle a developer to develop his or her land in accordance with the statutes and ordinances at the time the application is processed. *Seven Hills, LLC v. Chelan County*, 198 Wn.2d 371, 388, 495 P.3d 778 (2021). Covenants running with the land have an indefinite life, "subject to termination by conduct of the parties or a change in circumstances which renders its purpose useless." *Thayer v. Thompson*, 36 Wn. App. 794, 797, 677 P.2d 787, *review denied*, 101 Wn.2d 1016 (1984). Only covenants that entirely prohibit the use of land are unreasonable and therefore void. *Id.*

26

       b.      Condition 6(k) does not conflict with principles of state property law

NCNG invokes the vested rights doctrine and argues that the required covenant in Condition 6(k) will prevent it from developing its property after the wetland has moved or receded. In support of its argument, NCNG relies on the definition of a wetland in *Pacific Topsoils*[15] and WAC 173-22-080(3), which is as follows:

> A wetland is a transitional land that lies between terrestrial and aquatic systems where the water table is at or near the surface or where water covers the land. Three indicators confirm the existence of a wetland: (1) hydrophytic vegetation adapted to saturated soil conditions, (2) hydric soils, and (3) hydrology.

First, we note that *Pacific Topsoil*'s definition of "wetland" is outdated,[16] and WAC 173-22-080 was repealed in 2011. *See* WAC 173-22-030(10); Permanent Rules, Wash. St. Reg. 11-05-064 (effective Mar. 14, 2011).

Regardless, the vested rights doctrine establishes that a property owner is entitled to develop their land based on the *statutes and ordinances* in effect at the time of that property owner's land use application. *Seven Hills*, 198 Wn.2d at 388. NCNG appears to equate a covenant with statutes and ordinances, and then assumes the conservation covenant outlined in CCC 40.450.030.F.3 prohibits development. Neither are true.

While covenants running with the land have an indefinite life, they are "subject to termination by conduct of the parties or *a change in circumstances which renders its purpose useless.*" *Thayer*, 36 Wn. App. at 797 (emphasis added). NCNG makes much of the potential for

---

[15] *Pac. Topsoils, Inc. v. Dep't of Ecology*, 157 Wn. App. 629, 636, 238 P.3d 1201 (2010), *review denied*, 171 Wn.2d 1009 (2011).

[16] The current definition of "wetlands" found both in RCW 90.58.030(2)(h) and WAC 173-22-030(10) do not include the word "transitional."

wetlands to move or recede and causing a covenant to become obsolete. Even assuming wetlands may move,[17] the purpose of a conservation covenant in this context is functionally to give notice that a wetland exists on the property and that certain procedural requirements may be necessary prior to developing that property. *See* CCC 40.450.030.F.3. *If* the wetland moved such that the property no longer contained a wetland, that covenant could be terminated because there has been "a change in circumstances which renders [the covenant's] purpose useless." *Thayer*, 36 Wn. App. at 797.

Furthermore, the conservation covenant is not a prohibition on the use or development of the land. CCC 40.450.030.F.3. Indeed, the condition of a covenant is imposed *in conjunction with* "[a]ny action granting or approving *a development permit application*." CCC 40.450.030.F (emphasis added). Because a covenant is a not a statute or ordinance, is subject to termination, and the conservation covenant is not a prohibition on the use or development of the land, the vested rights doctrine is not implicated. *Seven Hills*, 198 Wn.2d at 388; *Thayer*, 36 Wn. App. at 797. Condition 6(k) does not violate background principles of state property law.

6. Vagueness

NCNG next argues that the County erred in adopting Condition 6(k) because CCC 40.450.030.F is unconstitutionally vague. *See* RCW 36.70C.130(1)(f). Specifically, NCNG asserts that "[a] condition which subdelegates the form and content of conservation covenants to

---

[17] The County argues there is no evidentiary support for the premise that wetlands increase, decrease, or relocate. However, we do not address this argument because the truth of the premise is not required to resolve NCNG's challenge.

future exercise of prosecutorial discretion cannot be reviewed in the present appeal; hence, standards are absent to prevent arbitrary enforcement." Br. of Appellant at 20. We disagree.

The rules of statutory construction apply to municipal ordinances. *Conner v. City of Seattle*, 153 Wn. App. 673, 683, 223 P.3d 1201 (2009), *review denied*, 168 Wn.2d 1040 (2010). Courts presume ordinances are constitutional and the challenging party bears the burden of establishing vagueness. *Id.* at 686.

"'A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. The purpose of the vagueness doctrine is to ensure that citizens receive fair notice as to what conduct is proscribed, and to prevent the law from being arbitrarily enforced.'" *State v. Evergreen Freedom Found.*, 192 Wn.2d 782, 797, 432 P.3d 805 (internal quotation marks omitted) (quoting *In re Contested Election of Schoessler*, 140 Wn.2d 368, 388, 998 P.2d 818 (2000)), *cert. denied*, 139 S. Ct. 2647 (2019).

NCNG states that its same arguments regarding procedural safeguards, discussed in Section B.4 above, apply to its argument here about CCC 40.450.030.F's purported vagueness. However, NCNG fails to identify what language in CCC 40.450.030.F is so vague as to render it unconstitutional. Instead, NCNG appears to take issue with the fact that because a covenant cannot be reviewed in *this appeal*, the County needs "outside procedures to cure the vagueness inherent in the ordinance." Br. of Appellant at 20. This argument is simply not supported by either the County's SMP or the record. NCNG conflates a challenge to a *potentially* objectionable covenant with a challenge to the requirement of having a covenant. As discussed above, a land use applicant may administratively appeal the wetland delineation that serves as the foundation of the

conservation covenant.  CCC 40.450.030.E.4.  Moreover, it is the responsibility of the *applicant*, not the prosecuting attorney, to delineate the wetland.  CCC 40.450.030.E.4.  The applicant's wetland delineation is determined according to highly specific criteria.  *See* CCC 40.450.030.D; CCC 40.450.030.E.

As discussed above, because procedural safeguards exist, applicants may administratively appeal, and because NCNG fails to identify what language within CCC 40.450.030.F is vague, the County did not err in adopting Condition 6(k).

7.     Due Process

NCNG argues that the County's Statement of Exemption deprived NCNG of due process.  Specifically, NCNG argues that Condition 6(k) "offers no opportunity to be heard on the form and content of the prosecutor's covenant" and because the present appeal also does not provide an opportunity to be heard on the covenant, the Statement of Exemption deprives NCNG "of all process related thereto."  Br. of Appellant at 22.

NCNG's due process challenge is a reiteration of its unlawful delegation and vagueness arguments.  For the reasons discussed in the preceding sections, NCNG has the ability to be heard on the substance of a conservation covenant.  The County's Statement of Exemption did not deprive NCNG of due process.

CONCLUSION

Condition 6(k) is not preempted by the SMA, does not unlawfully delegate the form and substance of conservation covenants, does not conflict with background principles of state property law, is not vague, and because the County did not deprive NCNG of due process, we affirm the trial court's order denying NCNG's land use petition.

No. 58452-2-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, C.J.

Price, J.